Bret A. Sumner (pro hac vice pending)
Malinda Morain (pro hac vice pending)
Theresa Sauer, Wyoming Bar #7-5063
BEATTY & WOZNIAK, P.C.
1675 Broadway, Suite 600
Denver, CO 80202
(303) 407-4499 (phone)
bsumner@bwenergylaw.com
mmorain@bwenergylaw.com
tsauer@bwenergylaw.com

*Counsel for Western Energy Alliance*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| WESTERN ENERGY ALLIANCE, <br><br> Plaintiff, <br><br> v. <br><br> U.S. DEPARTMENT OF THE INTERIOR, DOUG BURGUM, in his official capacity as Secretary, BUREAU OF LAND MANAGEMENT, a part of the U.S. Department of the Interior, BILL GROFFY, in his official capacity as Acting Director of the Bureau of Land Management, <br><br> Defendants. | Case No. _____ |

# COMPLAINT

Plaintiff Western Energy Alliance (the Alliance), by and through its undersigned counsel, respectfully submits this Complaint seeking declaratory relief and states as follows:

## INTRODUCTION

1. This civil action is brought by the Alliance against the United States Department of the Interior (Department of the Interior); Doug Burgum, in his official capacity as Secretary of the Department of the Interior (Interior Secretary); the United States Bureau of Land Management

(BLM); and Bill Groffy, in his official capacity as Acting Director of the BLM (collectively, Federal Defendants) for a declaratory judgment upholding the agency's actions.

2. The Alliance seeks a declaratory judgment from this court under 28 U.S.C. § 2201 holding that BLM complied with its statutory and regulatory obligations under the Federal Land Policy and Management Act (FLPMA) to ensure that the 2025 Record of Decision (ROD) and Approved Resource Management Plan Amendment (ARMPA) for Wyoming was "consistent with State and local plans to the maximum extent [the Secretary] finds consistent with Federal law and the purposes of [FLPMA]." 43 U.S.C. § 1712(c)(9).

## FINAL AGENCY ACTION

3. On December 22, 2025, Kristina Kirby, Acting Wyoming State Director of the Bureau of Land Management, approved the Greater Sage-Grouse (GrSG) Rangewide Planning Resource Management Plan Amendment for Wyoming (RMPA) and issued its ROD (the 2025 Wyoming ROD and ARMPA). This final agency action impacts Alliance members as BLM's land use decisions—including decisions impacting federal oil and gas leases held by Alliance member companies—must conform to the RMPA.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-706 (judicial review of final agency action) to review Federal Defendants' consistency with the FLPMA. This Court can grant declaratory and injunctive relief under 28 U.S.C. § 2201 (declaratory judgment), 28 U.S.C. § 2202 (injunctive relief), and 5 U.S.C. §§ 701-706.

5. Venue lies in this Court under 28 U.S.C. § 1391(e). Defendants have offices in the District of Wyoming, and the Acting Wyoming State Director Kristina Kirby is located in Wyoming. Venue is further proper because a substantial part of the events giving rise to the

claim—including decisions related to Wyoming federal lands—were made by the BLM Wyoming State Office in the State of Wyoming, and a substantial part of the property at issue is located in Wyoming. 28 USC § 1391(e)(1)(B) and (C). Furthermore, the Alliance has members who operate on federal lands impacted by the decisions within the District of Wyoming.

## THE PARTIES

6. The Alliance represents companies engaged in all aspects of environmentally responsible exploration and development of oil and natural gas in the West, including in the State of Wyoming.

7. Alliance members live and work in and around GrSG habitat, including habitat in the State of Wyoming, and have unique and specialized knowledge of how to incorporate management provisions to benefit the GrSG and its habitat. Alliance members also hold oil and gas leases on federal lands that are governed by the 2025 Wyoming ROD and ARMPA.

8. The Department of the Interior is an agency of the United States within the meaning of the APA. 5 U.S.C. § 551(1).

9. Defendant Doug Burgum is the Interior Secretary and has ultimate responsibility for the BLM's GrSG plan amendments.

10. BLM is an agency of the United States within the meaning of the APA. 5 U.S.C. § 551(1).

11. Bill Groffy is the Acting Director of BLM and has ultimate responsibility for administering the GrSG plan amendments on BLM lands.

## GENERAL ALLEGATIONS

### Background

12. This action seeks declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, and the APA, 5 U.S.C. §§ 702–706, to resolve longstanding and ongoing legal and

regulatory uncertainty surrounding the BLM's federal land use plans in Wyoming addressing GrSG conservation and management.

13. Since at least 2008, BLM's land use planning efforts governing GrSG habitat in Wyoming have been subject to repeated and overlapping legal challenges, resulting in persistent uncertainty regarding the legality and durability of those plans.

14. That uncertainty directly affects the real property interests of Alliance members that hold federal oil and gas leases whose leasehold rights, investment-backed expectations, and development planning depend on stable, lawful, and predictable land use plans.

15. The Alliance does not seek to invalidate or enjoin BLM's land use plans. Instead, the Alliance seeks a judicial declaration confirming that, in adopting and maintaining the challenged land use plans, BLM complied with its statutory obligation under FLPMA, including 43 U.S.C. § 1712(c)(9), by ensuring consistency with the State of Wyoming and applicable local land use plans to the maximum extent consistent with federal law and FLPMA's purposes.

16. This statutory provision of BLM's organic statute reflects Congress's intent that federal land use planning be coordinated—not isolated—from State and local land use frameworks, particularly in states such as Wyoming where land use, wildlife management, and energy development are extensively planned at the state level.

17. Despite BLM's compliance with FLPMA, its Wyoming GrSG land use plans have been the subject of serial litigation in multiple forums for more than a decade.

18. These challenges have created recurring legal doubt as to whether the plans will remain in effect, be vacated, or be replaced, notwithstanding BLM's repeated findings of statutory compliance. This uncertainty in turn results in leasing uncertainty and permitting uncertainty through RMP, lease sale, and permitting related legal challenges.

19. The cumulative effect of these ongoing legal, regulatory, and policy disputes has been substantial regulatory uncertainty, which directly translates into business uncertainty for Alliance members and other federal oil and gas lessees.

20. Alliance members must make long-term, capital-intensive decisions regarding leasing, development timing, infrastructure investment, and regulatory compliance without clarity as to the stability and legality of the governing land use plans.

21. This substantial uncertainty constitutes a present and concrete controversy, not a hypothetical dispute, and is traceable to the unresolved legal status of BLM's compliance with 43 U.S.C. § 1712(c)(9).

## Legal Framework

**The APA**

22. The APA also allows an aggrieved or affected party to challenge final agency actions in federal court. 5 U.S.C. §§ 702, 704.

**Mineral Leasing Act (MLA)**

23. The MLA grants the Interior Secretary exclusive authority to lease federal lands, including, with the Agriculture Secretary's consent, National Forest System lands, for oil and gas development. *See* 30 U.S.C. § 226.

24. The MLA also grants the Interior Secretary exclusive authority to administer operations on such mineral leases (subject to Forest Service supervision of surface use on National Forest System lands). *See* 30 U.S.C. § 226(g).

**FLPMA**

25. FLPMA requires that the federal government manage public lands under principles of multiple use and sustained yield in a manner that recognizes the nation's need for domestic

sources of minerals, including implementation of the Mining and Mineral Policy Act of 1970. 43 U.S.C. § 1701(a)(12).

26. FLPMA defines "multiple use" as "management of public lands and their various resource values so that they are utilized in the combination that will best meet the present and future needs of the American people" while providing a "combination of balanced and diverse resources uses . . . without permanent impairment of the productivity of the land and the quality of the environment with consideration being given to the relative values of the resources. . . ." 43 U.S.C. § 1702(c).

27. FLPMA defines "sustained yield" as the "achievement and maintenance in perpetuity of a high-level annual or regular periodic output of the various renewable resources of the public lands consistent with multiple use." 43 U.S.C. § 1702(h).

28. The Interior Secretary, with public involvement, must "develop, maintain, and, when appropriate, revise land use plans" providing for use of the public lands. 43 U.S.C. § 1712(a).

29. Once a land use plan is approved, the Secretary is required to manage public lands "in accordance with" the approved plan. 43 U.S.C. § 1732(a).

30. FLPMA regulates the Interior Secretary's obligations to plan resource management, 43 C.F.R. § 1610.1, and provides regulatory guidance to BLM in administering the development of federal oil and gas resources, 43 C.F.R. § 3100.

31. BLM's objective for resource management planning is to maximize resource values for the public through a "rational, consistently applied set of regulations and procedures" while promoting multiple use management and providing for public participation. 43 C.F.R. § 1601.0-2.

32. FLPMA also requires federal agencies to provide adequate notice and opportunity to comment on land use plan amendments and revisions. 43 U.S.C. § 1712(f).

33. FLPMA mandates a substantive role for states and their governors in the federal land use planning process. The Interior Secretary must coordinate the agency's land use inventory, planning, and management activities with those of the states and local governments where the lands are located. 43 U.S.C. § 1712(c)(9).

34. FLPMA directs the Interior Secretary to make land use plans consistent with state and local plans "to the maximum extent" consistent with law. *Id.*

35. Under this requirement, BLM's land use planning regulations provide for "Consistency Reviews" by governors. The governors have 60 days to identify inconsistencies between federal land use plans and state plans and provide recommendations for changes to the federal plans. Such recommendations will be accepted if the recommendations "provide for a reasonable balance" between national and state interests. 43 C.F.R. § 1610.3-2(e).

36. BLM's planning regulations allow any person who participated in the planning process and who has an interest that may be adversely affected by the BLM's planning decisions to protest proposed planning decisions upon issuance of an Environmental Impact Statement (EIS) containing the proposed plan is published in the Federal Register. 43 C.F.R. § 1610.2.

**Factual Background**

37. The GrSG (*Centrocercus urophasianus*) is the largest North American grouse species. Based on federal habitat mapping, approximately 70% of the lands of the state of Wyoming are considered some form of habitat for the GrSG.

38. States and their wildlife agencies have primary authority over the management of species that are not listed as endangered or threatened under the Endangered Species Act by the United States Fish and Wildlife Service, including the GrSG.

39. The GrSG population is tracked by state agencies, including agencies within the State of Wyoming

40. States, local governments, associations, and private companies, including oil and gas operators, have voluntarily taken actions to conserve the GrSG and its habitat on federal, state and private lands.

**State Conservation Plan Efforts**

41. Concurrently with BLM's GrSG planning that began in 2011, then-Interior Secretary Kenneth Salazar invited western governors to develop state-based conservation plans and state-based regulatory mechanisms aimed at avoiding the listing of the GrSG under the ESA.

42. In reliance on the invitation by then-Interior Secretary Salazar, the governors of the states of Colorado, Idaho, Montana, North Dakota, Nevada, Oregon, South Dakota, Utah, and Wyoming initiated and renewed efforts to create state conservation plans, consistent with those states' extensive knowledge of GrSG observations, as well as stakeholder issues within their individual states.

43. The state plans are specifically tailored for the conditions in the states, where habitat quality, sage grouse population characteristics, ecosystems, economic activities, threats, and other factors differ across the range.

44. For example, the State of Wyoming's core area strategy is currently set forth in Wyoming Executive Order 2019-3, which revised Executive Orders 2015-4 and 2017-1.

45. The Wyoming Core Area Strategy considered recommendations from the statutorily established Sage Grouse Implementation Team, and outlines the Core Population Areas, Connectivity Areas and Winter Concentration Areas, as well as a permitting process involving a density disturbance calculation tool; a mitigation framework of avoid, minimize, then mitigate; and stipulations.

**Relevant Land Use Planning Efforts**

46. On March 23, 2010, the U.S. Fish and Wildlife Service (FWS) found that the GrSG was warranted for protection under the Endangered Species Act (ESA) but was precluded by higher listing priorities. 75 Fed. Reg. 13,910. In the finding, FWS also indicated that existing regulatory mechanisms were insufficient to protect the GrSG.

47. In response to this finding, the Department of the Interior announced its Greater Sage-Grouse Planning Strategy (Planning Strategy) to amend, pursuant to FLPMA, through a NEPA process, multiple existing federal land use plans that cover GrSG habitat. *See* BLM, Department of the Interior, Instructional Memorandum 2012-044, BLM National Greater Sage-Grouse Land-Use Planning Strategy (December 2011).

48. Throughout 2013 Federal Defendants released draft land use plan amendments (Draft Plans) and draft Environmental Impact Statements (EISs) according to the Planning Strategy.

49. In May 2015, BLM and the Forest Service released proposed land use plans (Proposed 2015 Plans) and final 2015 EISs, including plans covering lands within the state of Wyoming.

50. In September 2015, BLM issued two RODs and associated approved RMPs and RMPAs, and the Forest Service issued two RODs and associated Approved Land Use Plan Amendments (LUPAs).

51. These RODs and underlying Approved Plans were organized under two administrative planning regions: the Rocky Mountain Region and the Great Basin Region. The Rocky Mountain Region includes the BLM's RMPs and amendments (and corresponding Forest Service LUPAs) in the states of North Dakota, South Dakota, Wyoming, Colorado, and portions

9

of Montana. The Great Basin Region includes the BLM RMP amendments (and corresponding Forest Service LUPAs) in California, Nevada, Oregon, Idaho, Utah and portions of Montana.

52. These 2015 RODs and underlying Approved Plans imposed numerous restrictions on current and new federal oil and gas leases, and upon other public land users and developers, for the protection of GrSG habitat.

53. In May of 2018, BLM engaged in another land use planning process involving the GrSG plans covering lands in the State of Wyoming. BLM released its Wyoming Greater Sage-Grouse Draft Resource Management Plan Amendment and Draft Environmental Impact Statement on May 2, 2018. *See* 83 Fed. Reg. 19,801 (May 4, 2018).

54. On March 15, 2019, BLM issued a ROD (2019 BLM ROD) and adopted final RMPAs to BLM's 2015 Sage-Grouse Plans in Wyoming based on the December 2018 Final EISs.

55. On October 16, 2019, a federal district court in the District of Idaho issued a preliminary injunction enjoining BLM from implementing the 2019 BLM Sage-Grouse Plan Amendments for Idaho, Wyoming, Colorado, Utah, Nevada/Northeastern California, and Oregon, and requiring BLM to re-implement the relevant 2015 GrSG Plans. *See W. Watersheds Project v. Schneider*, 417 F. Supp. 3d 1319, 1335 (D. Idaho 2019).

56. In February of 2021, in response to the Idaho Court's Preliminary Injunction Order, BLM published six draft Supplemental EISs, including one covering lands in the State of Wyoming to "supplement and clarify the NEPA analysis BLM relied on in approving its 2019 Sage Grouse Plan Amendments." Notice of Availability of the Wyoming Draft Supplemental Environmental Impact Statement (SEIS) for Greater Sage Grouse Conservation, 85 Fed. Reg. 10,188 (Feb. 21, 2020).

57. BLM issued the final SEIS for Wyoming on November 20, 2020. On January 14, 2021, BLM published six RODs completing the supplemental NEPA process, including for Wyoming. *See* Notice of Availability of the Record of Decision for Greater Sage-Grouse Management, Wyoming, 86 Fed. Reg. 3184 (Jan. 14, 2021).

58. The new administration in 2021 began yet another new planning process with respect to the conservation of GrSG habitat, and on November 22, 2021, published a notice of intent to initiate a new planning process in the Federal Register. *See* Notice of Intent to Amend Land Use Plans Regarding Greater Sage-Grouse Conservation and Prepare Associated Environmental Impact Statements. *See* 86 Fed. Reg. 66,331 (Nov. 22, 2021).

59. In March of 2024, BLM issued its Draft Resource Management Plan Amendment and Environmental Impact Statement, reflecting another amendment to 76 BLM RMPs in the range of greater-sage grouse, including the plans covering lands in the State of Wyoming. The public comment period closed on June 13, 2024.

60. On November 8, 2024, BLM issued the Proposed Resource Management Plan Amendment (PRMPA) and Final Environmental Impact Statement (FEIS), which initiated a 60-day governors' consistency review, including for the State of Wyoming. The 60-day period began on November 8, 2024, and concluded on January 7, 2025. The State of Wyoming asserted inconsistencies with Wyoming's plans and BLM and the Governor's office met several times to discuss the concerns. Ultimately, the Governor's Office expressed support for the BLM to move forward with issuance of the RMP Amendment and ROD and did not submit an appeal of the consistency response to the BLM Director.

61. On November 15, 2024, a notice was published in the Federal Register announcing the issuance of the PRMPA/FEIS, which triggered a 30-day protest period. *See* 89 Fed. Reg. 90,311 (Nov. 15, 2024).

62. On January 15, 2025, BLM announced the issuance of Records of Decisions for the Approved RMP Amendments ("ARMPA") for Greater Sage-Grouse Rangewide Planning in Oregon and Colorado. *See* https://eplanning.blm.gov/eplanning-ui/project/2016719/510.

63. On September 3, 2025, BLM published a notice of significant change in the Federal Register, which initiated a 30-day public comment period on changes to the Proposed Resource Management Plan Amendment previously released in November 2024. *See* 90 Fed. Reg. 42,607 (Sep. 3, 2025).

64. On December 22, 2025, BLM published its Record of Decision and Approved Resource Management Plan Amendment for Wyoming (2025 Wyoming ROD and ARMPA). The 2025 Wyoming ROD and ARMPA implement land use plans that will impact how BLM manages lands within Wyoming, including how it will regulate oil and gas development on Alliance members' federal leases.

65. The 2025 Wyoming ROD and ARMPA directly impact Alliance members because, under FLPMA, BLM's land use decisions—including decisions regarding the federal lands and minerals held by Alliance members through oil and gas leases—must conform to these land use plans. These plans require BLM to consider application of measures to avoid, minimize, and mitigate potential impacts to GrSG and its habitat through completion of requirements in BLM regulations, including lease stipulations, project design requirements, or required design figures. Application of the land use plan will, therefore, adversely affect and aggrieve industry members

who own and operate federal oil and gas leases within Wyoming that are directly impacted by the 2025 Wyoming ROD and ARMPA.

66. Alliance members are also impacted by the business and regulatory certainty of the ever-changing BLM land use plans based on GrSG planning and serial litigation. This uncertainty adversely affects BLM's federally-granted leasehold interests, and leaseholders' ability to develop their federal leases to meet the contractual obligations of those leases.

67. Declaratory relief is appropriate and necessary to clarify the parties' legal rights and obligations; promote regulatory certainty, reduce duplicative and piecemeal litigation, and effectuate Congressional intent under FLPMA that land use plans conform to state plans.

**FIRST CAUSE OF ACTION**
**(Declaratory Judgment)**

68. The Alliance incorporates by reference each of the allegations set forth above.

69. BLM was required to submit the Proposed RMP Amendment/Final EIS available to the Governor of Wyoming for a 60-day consistency review as required by 43 C.F.R. § 1610.3-2(e).

70. BLM submitted the Proposed RMP Amendment/Final EIS to the Governor of Wyoming for a consistency review.

71. The Governor of Wyoming, within 60 days, identified inconsistencies between federal land use plans and state plans and provided recommendations for changes to the federal plans.

72. BLM accepted these recommendations as they "provide[d] for a reasonable balance" between national and state interests. 43 C.F.R. § 1610.3-2(e).

73. The Interior Secretary must coordinate the agency's land use inventory, planning, and management activities with those of the states and local governments where the lands are located. 43 U.S.C. § 1712(c)(9).

74. FLPMA directs the Interior Secretary to make land use plans consistent with state and local plans "to the maximum extent" consistent with law. *Id.*

75. An actual controversy exists regarding whether BLM complied with 43 U.S.C. § 1712(c)(9) in conforming its federal RMP to the State of Wyoming's GrSG Executive Order and management plans.

76. The Alliance contends and seeks confirmation that BLM:

   (a) Coordinated with the State of Wyoming and local governments;

   (b) Considered State and local land use plans in good faith;

   (c) Ensured consistency to the maximum extent required by federal law; and

   (d) Conformed the Wyoming plans to State management plans consistent with its obligations under FLPMA.

77. Declaratory relief will clarify legal obligations for federal oil and gas lessees and other stakeholders, reduce litigation, and alleviate ongoing business hardship caused by unresolved legal and regulatory uncertainty.

## PRAYER FOR RELIEF

WHEREFORE, in light of the foregoing, Plaintiff Western Energy Alliance respectfully requests that the Court:

78. Declare that BLM complied with its obligations under FLPMA to conform the plans to provide a reasonable balance between national and state interests in compliance with 43 U.S.C. § 1712(c)(9),

79. Declare that BLM's coordination and consistency determinations with the State of Wyoming and applicable local plans satisfy federal statutory requirements; and

80. Grant such further relief as the Court deems just and equitable.

DATED this 23rd day of December, 2025.

                BEATTY & WOZNIAK, P.C.

                */s/ Theresa Sauer*
                Theresa Sauer (Wyoming Bar #7-5063)
                tsauer@bwenergylaw.com
                Bret A. Sumner (pro hac vice pending)
                bsumner@bwenergylaw.com
                Malinda Morain (pro hac vice pending)
                mmorain@bwenergylaw.com
                1675 Broadway Street, Suite 600
                Denver, Colorado 80202
                Phone Number: 303-407-4499

                ATTORNEYS FOR PLAINTIFF
                WESTERN ENERGY ALLIANCE